Margaret KINZLI; Evelyn Goossen; Philip Kinzli; Ernest Kinzli, Plaintiffs-Appellants,

v.

CITY OF SANTA CRUZ, Defendant-Appellee.

Nos. 86–1504, 86–1624.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1986.

Decided June 4, 1987.

Jess S. Jackson, San Francisco, Cal., for plaintiffs-appellants.

Gerald Bowden, Santa Cruz, Cal., for defendant-appellee.

Dennis M. Eagan, San Francisco, Cal., for amicus curiae, State of Cal. and Cal. Coastal Committee.

Before GOODWIN, PREGERSON and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The Kinzli plaintiffs (Kinzlis) brought this action against the City of Santa Cruz (City), alleging that the City violated their federal and state rights as property owners. The Kinzlis now appeal the district court's holdings in favor of the City, specifically: (1) the district court's dismissal on the merits of the Kinzlis' claim that the adoption of a local ordinance deprived them of their property without just compensation in violation of the fifth and fourteenth amendments of the United States Constitution; (2) the district court's dismissal on the merits of the Kinzlis' claim of a violation of their right to equal protection; (3) the district court's dismissal of their claim for relief under 42 U.S.C. § 1983; and (4) the district court's grant of the City's motion for summary judgment on the Kinzlis' claim of denial of substantive due process rights and their claim of federal constitutional violations arising from the City's 1970 condemnation of their property. We hold that all of the Kinzlis' claims were not ripe for adjudication by the district court,

and therefore vacate the district court's judgment.

I

A

The factual background of the Kinzlis' claims is exhaustively presented in the district court's published opinion, *Kinzli v. City of Santa Cruz,* 620 F.Supp. 609, 611–615 (N.D.Cal.1985). The facts relevant for the purposes of this appeal are summarized as follows:

The Kinzli property which is the subject of this action is located adjacent to the city limits of Santa Cruz and was purchased by the Kinzli family in 1925. Over the years, the Kinzli property gradually became surrounded by urban development, although the property has retained its rural character. *Id.* at 611.

In 1968, the City filed a condemnation action in state court to acquire approximately 4 acres of the Kinzli property for the construction of a public street, Broadway-Brommer Road. A stipulated judgment was entered in this condemnation proceeding in 1970, granting the City a right-of-way through the property. Since this time, the City has represented to the Kinzlis that Broadway-Brommer Road would be built and that their property could be developed for commercial and higher density residential purposes. These representations apparently continued until at least October of 1978, when the City filed, then abandoned, a second condemnation action to acquire more of the Kinzli property. The Broadway-Brommer Road was never built. *Id.* at 611–12.

In 1979, the voters of the City adopted an initiative ordinance entitled "City of Santa Cruz Measure O Greenbelt and Low Growth General Plan Policy Ordinance" (Measure O). Measure O limits the uses available to greenbelt land, which includes the Kinzli property, through 1990. There are eight land uses allowed under section 3 of the Measure, including one catchall: "Other uses [are allowed] which maintain

the open space character of the land." [1] Section 4 of Measure O prohibits the City from providing certain urban services to the greenbelt land. The City is required under section 5 to revise its General Plan in accordance with the Measure. Finally, under section 8, no part of Measure O may be "amended or repealed except by a vote of the people." *Id.* at 613.

The Santa Cruz City Council subsequently enacted the Greenbelt Overlay Ordinance (GBO), which implements the Measure and explains the requirements for special use permits and conditions for the extension of urban services to greenbelt land. Santa Cruz Municipal Code ch. 24.53, § 24.53.2000 (1981). The GBO allows a number of specific uses under special use permits, including uses which "maintain the open space character of the land." *Id.* § 24.53.2010.[2] The GBO allows the extension of urban services to greenbelt land if such extension is consistent with the GBO and is approved by both the City Department of Water and the Department of Public Works. *Id.* § 24.53.2040.

The Kinzli property falls within the greenbelt land covered by Measure O and the GBO. The City acknowledges that Measure O affects the uses available for the Kinzli property, such that if Measure O and the GBO had not been adopted and the superseded 1964 General Plan was still in force, the Kinzli property would now be designated for high density development. *Kinzli,* 620 F.Supp. at 613.

The Kinzlis attempted to sell the property in 1978 and 1979 under contracts which were conditioned upon the receipt of permits from the City for residential development. One potential purchaser/developer filed an application on behalf of the Kinzlis

with the City for residential units on the property. However, he did not pursue the application once he was told by a staff engineer for the Department of Public Works that the City could not provide water services to the property. An unofficial map then used by the Department indicated that this was the case. *Id.*

While Measure O prevents the uses contemplated in this abandoned application, the Kinzlis have not submitted an application for a permit allowing any other potential use. *Id.* at 613. The securing of a development permit is a process requiring the consideration and approval of an application by numerous state and local agencies. It entails negotiation, modification of plans, and the filing of an Environmental Impact Report. This process has not been set in motion by the Kinzlis; the developer initiated the permit process but withdrew his application for a residential use permit at an early stage. *Id.* at 613–14.

**B**

In 1980, the Kinzlis brought this action against the City, charging that the adoption of Measure O, as applied to their property, and the City's conduct relating to the 1970 condemnation proceedings, violated their federal constitutional and civil rights and their rights under California law. At trial, the district court focused on the questions of whether the Kinzlis' taking claim was ripe for adjudication and, if so, whether a taking had occurred.

In a published decision, the district court held that there had been no taking of the Kinzlis' property and therefore no violation of their rights under the fifth and fourteenth amendments, such that they were

---

1. The eight uses available under section 3 are:
    1) Timber production and harvesting;
    2) Agriculture, including grazing;
    3) Private recreation;
    4) Public recreation;
    5) Wildlife habitat;
    6) Watershed or groundwater recharge;
    7) Scientific or educational purposes which maintain the open space character of the land; and
    8) Other uses which maintain the open space character of the land.

*Kinzli v. City of Santa Cruz,* 620 F.Supp. 609, 612 (N.D.Cal.1985).

2. The special permit uses available under the GBO include those listed in Measure O, *see supra* n. 1, with the exception of wildlife habitat and watershed or ground water recharge. Two new uses are also allowed under the GBO: single-family dwellings and accessory buildings. *Kinzli,* 620 F.Supp. at 613.

not entitled to relief under 42 U.S.C. § 1983. *Kinzli*, 620 F.Supp. 609. In its subsequent unpublished order of December 17, 1985, the district court granted summary judgment for the City regarding the Kinzlis' claims relating to the 1970 condemnation proceedings, explaining that these claims were not ripe for review. The court also found that there had been no equal protection violation. The district court then exercised its discretion and dismissed Kinzlis' pendent California state law claim for inverse condemnation, which was based upon the same facts as the federal claims.

On appeal, the Kinzlis argue that: (1) the district court erred in finding that beneficial uses for the property remained and, therefore, that the City's restrictions on the property's available uses did not effect a taking in violation of the fifth and fourteenth amendments; (2) the district court violated procedural due process by finding that the City's regulation of the Kinzli property did not deny the Kinzlis their equal protection rights where their equal protection claim was not heard at trial; and (3) the district court erred in dismissing claims based upon the City's 1970 condemnation proceedings as not ripe for adjudication.

## II

█ We first address the Kinzlis' contention that the district court erred in finding that the adoption of Measure O did not deprive them of property without compensation in violation of the fifth and fourteenth amendments[3] and that, as a result, they were not entitled to relief under 42 U.S.C. § 1983. We believe that the district court erred, not because the court should have found that a taking *had* occurred, but because it should have dismissed the takings claim as not ripe for adjudication. The district court applied an incorrect ripeness test, prematurely reaching the merits

and resting its decision on the finding of "no taking." *Id.* at 616–17, 624.[4]

█ The district court properly recognized that under Supreme Court authority, the Kinzlis' claim that Measure O effected a "taking" as applied to their property does not, as a rule, present a concrete controversy ripe for adjudication unless the Kinzlis have first submitted a development plan or applied for a land use permit. *Kinzli*, 620 F.Supp. at 616. *See also MacDonald, Sommer & Frates v. Yolo County,* —— U.S. ——, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 3117, 87 L.Ed.2d 126 (1985); *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). Recently, in *Mac-Donald*, the Supreme Court explained that to assert a regulatory takings claim, a plaintiff must establish its two components: (1) that the regulation has gone so far that it has "taken" plaintiff's property, and (2) that any compensation tendered is not "just." *MacDonald*, 106 S.Ct. at 2566.

To establish this first component of a regulatory takings claim, "an essential prerequisite" must be present: there must be a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes.

*Id.* This "final and authoritative determination" must expose "the nature and extent of permitted development." *Id.* at 2567. *See also Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145–46 (9th Cir.1986).

The Supreme Court has expounded the requirements for a "final and authoritative determination." In *Hamilton Bank*, the Supreme Court not only set forth the re-

---

3. The fifth amendment's prohibition of the taking of property without just compensation applies to the states through the fourteenth amendment. *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1897); *Williamson County Regional Planning Comm'n v. Hamilton*

*Bank*, 473 U.S. 172, 105 S.Ct. 3108, 3111 n. 1, 87 L.Ed.2d 126 (1985).

4. We review the district court's finding regarding the ripeness of the Kinzlis' claim de novo. *Assiniboine and Sioux Tribes v. Board of Oil and Gas*, 792 F.2d 782, 787 (9th Cir.1986).

quirement that the plaintiff must first have submitted a development plan which was rejected, but also explained that the plaintiff must seek variances which would permit uses not allowed under the regulations. 105 S.Ct. at 3117–18. *See also MacDonald*, 106 S.Ct. at 2567. Therefore, the "final decision" which inflicts a concrete injury on the plaintiff and is ripe for adjudication as a claim of a regulatory taking, even if the claim is brought under 42 U.S.C. § 1983, requires at least two decisions against the Kinzlis: (1) a rejected development plan, and (2) a denial of a variance. *Hamilton Bank*, 105 S.Ct. at 3117–18. The Kinzlis have not secured or even attempted to secure either of these two requisite decisions.

■ Nevertheless, their takings claim may be ripe under the Ninth Circuit's "futility exception" to the threshhold requirement of a final decision. Under this exception, the requirement of the submission of a development plan is excused if such an application would be an "idle and futile act." *Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n. 2 (9th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). *See also American Savings & Loan Ass'n v. County of Marin*, 653 F.2d 364, 371 (9th Cir.1981) (plaintiff has "the heavy burden of showing that compliance with local ordinances would be futile.").

The district court found that this futility exception applied to the Kinzlis' taking claim, and that their claim was therefore ripe for adjudication. *Kinzli*, 620 F.Supp. at 620. However, it is unclear which test the district court applied in determining that submission of a plan would be futile. The district court stated that it believed that the application would be futile if the GBO "deprives plaintiffs of any beneficial use." *Id.* at 617. However, the district court then misapplied this standard by finding that beneficial uses are available under the GBO, *id.* at 622, yet nevertheless hold-

ing that the futility exception applies. *Id.* at 620. Instead, the district court may have applied a "marketability" test for futility. It appears that the court decided that any application would have been futile because no plan could "satisfy the requirements of Measure O and the GBO and still interest ... potential purchasers." *Id.*

We reject the district court's view that futility may be determined, absent any rejected development plan, by inquiring whether any beneficial use remains or whether the regulatory regime inhibits the property's marketability. Adoption of such standards would require courts to speculate as to what potential uses may be lurking in the hopes of the property owner and in the minds of developers and city planners. This would result in the same sort of speculation that the ripeness doctrine prohibits.

■ The precise test for whether the futility exception applies has not been clearly articulated. In *Norco*, this court explained in dictum that the futility exception may apply if it is "clear beyond peradventure that excessive delay in such a final determination [would cause] the present destruction of the property's beneficial use." 801 F.2d at 1145.[5] In *American Savings*, this court suggested another test for futility: the submission of a plan for development is futile if a sufficient number of prior applications have been rejected by the planning authority. 653 F.2d at 371. The precise point at which submission is futile was not determined, although the court noted that two plans which were submitted and rejected were sufficient for ripeness in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). *American Savings*, 653 F.2d at 371.

The Supreme Court has indicated that *at least one* application must be submitted before the futility exception applies. In *MacDonald*, the Court arguably gave ap-

---

**5.** In this case, an application by the Kinzlis would not be futile under the *Norco* "delay" analysis, since there is no showing that an application would take an "excessive" amount of time. An excessive amount of time would have

to be considerable, since the Supreme Court has held a claim to be unripe even where the application process covering a development project required approximately eight years. *See Hamilton Bank*, 105 S.Ct. at 3112–14.

proval to the California Court of Appeal's conclusion that the futility test is not met where a "meaningful application has not yet been made." 106 S.Ct. at 2568 n. 8. *Cf. id.* at 2571–72 (White, J., dissenting) (denial of one adequate application along with other factors would support a finding of futility of further applications). *See also Hamilton Bank,* 105 S.Ct. at 3117; *Agins,* 447 U.S. at 260, 100 S.Ct. at 2141. A "meaningful application" does not include a request for "exceedingly grandiose development." *MacDonald,* 106 S.Ct. at 2569 n. 9. In addition, a property owner is not required to pursue an application through "unfair procedures." *Id.* at 2567 n. 7.

Under these principles, the Kinzlis cannot rely upon the futility exception. We need not determine the point at which *reapplications* for development become futile. Under *MacDonald* and *Hamilton Bank,* at least one "meaningful application" must be made. The Kinzlis have neither submitted a development plan nor applied for a variance. The application made by the developer was not meaningful since it was abandoned at an early stage in the application process.[6]

The Kinzlis' takings claim, therefore, is not ripe: they have failed to secure a "final decision" from the City regarding acceptable uses, and the futility exception does not excuse this failure since no "meaningful application" has been made.

The second component of a regulatory takings claim is a showing that the proffered compensation is not "just." *MacDonald,* 106 S.Ct. at 2566. This requires that the plaintiff seek compensation from the state if adequate procedures are available. *Hamilton Bank,* 105 S.Ct. at 3121. *See MacDonald,* 106 S.Ct. at 2567 n. 7

(piecemeal litigation or otherwise unfair procedures need not be undertaken). The Kinzlis have not sought compensation through state procedures. We need not, therefore, reach the question of whether California procedures are adequate, because the Kinzlis failed to obtain final decisions denying their application for development and denying them a variance. *See MacDonald,* 106 S.Ct. at 2566–69 (court unable to decide whether plaintiff is required to pursue their inverse condemnation claim in California state courts since the county had not yet made a final determination). *Cf. Furey v. City of Sacramento,* 780 F.2d 1448, 1450 n. 1 (9th Cir.1986) (since California state courts have made it clear that the only remedy available in a state court action is declaratory relief, and since plaintiff has received a final decision regarding the regulation's application to his property, plaintiff's taking claim is ripe).

### III

█ The district court disposed of the Kinzlis' equal protection claim by explaining that "implicit in its findings of fact was that the city had a rational basis for its action," and therefore there had been no denial of equal protection.[7] The Kinzlis contend that the district court erred in dismissing their claim and denied them procedural due process by not allowing the Kinzlis to fully argue this claim. Apparently, it is true that the trial was limited to other specific issues. *Kinzli,* 620 F.Supp. at 611. However, the Kinzlis' equal protection claim is not ripe for consideration by the district court "until planning authorities and state review entities make a final determination on the status of the property." *Norco,* 801 F.2d at 1145. The Kinzlis'

---

**6.** Under *Hamilton Bank's* ripeness requirements, a plaintiff must also show that an application for a variance was denied. 105 S.Ct. at 3120–21. It follows from the above discussion that the futility exception would excuse this requirement if at least one "meaningful application" for a variance is denied. *Id. See MacDonald, Sommer & Frates v. Yolo County,* —— U.S. ——, 106 S.Ct. 2561, 2568 n. 8, 91 L.Ed.2d 285 (1986).

**7.** The equal protection clause is violated here only if the City's treatment of the Kinzlis bears no rational relationship to a legitimate government purpose. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *Parks v. Watson,* 716 F.2d 646, 654 (9th Cir.1983). The district court found that the requirement of a legitimate government purpose was satisfied by the City's open space ordinance. *Kinzli,* 620 F.Supp. at 616.

equal protection claim therefore is not ripe, just as their taking claim is not ripe.

## IV

■ The Kinzlis also claim that their substantive due process rights were violated by the City's restrictions on their property. Moreover, the Kinzlis argue that the district court's dismissal of their substantive due process claim as unripe without considering this claim at trial is a denial of procedural due process.

The district court, in its unpublished order, correctly cited *Hamilton Bank* as authority for finding that "even if a Fifth Amendment claim would arguably be *recast* as a due process claim, it would be premature...." (citing *Hamilton Bank*, 105 S.Ct. at 3123–24) (emphasis added). The district court further explained that the Kinzlis must first obtain a final decision from the state court before this claim is ripe.

The appropriate explanation for this claim's prematurity, however, is that the City has not yet made a final decision regarding the property. As discussed in Section II, the Supreme Court's decision in *Hamilton Bank* requires that the Kinzlis first obtain final decisions regarding the application of the regulations to their property and the availability of variances. 105 S.Ct. at 3124. Therefore, there is no denial of procedural due process because their substantive due process claim is not ripe.

## V

■ The Kinzlis contend that the district court improperly granted the City's motion for summary judgment on their various claims arising from the City's alleged failure to keep promises made to them relating to the 1968–1970 condemnation proceedings. The Kinzlis allege that the City promised that Broadway-Brommer Road would be built and that their property could be developed for high-density uses. *Kinzli*, 620 F.Supp. at 611–12. They now seek damages for inverse condemnation arising from these unkept promises. The district court held that these claims were not ripe under *Hamilton Bank*, since the Kinzlis had not yet sought compensation through state procedures.

The 1980 stipulated judgment granting the City a right-of-way through the Kinzli property constitutes a final determination of permitted uses and the amount of compensation to be paid. *See City of Alameda v. Cohen*, 133 Cal. 5, 7, 65 P. 127, 128 (1901). However, there has been no final determination regarding the Kinzlis' claim for damages for inverse condemnation arising from the City's actions *after* the initial condemnation judgment. The Kinzlis must seek such a determination before these claims are ripe. *See Hamilton Bank*, 105 S.Ct. at 3121.

■ The ripeness requirement of first seeking additional compensation from the City is excused only if the state does not have an available and adequate inverse condemnation procedure. *Hamilton Bank*, 105 S.Ct. at 3122. The Kinzlis contend that California does not have an available and adequate procedure for obtaining compensation for inverse condemnation. We disagree.

There is an "available" procedure in California for the consideration of the Kinzlis' inverse condemnation claims. Their claims arising from the City's actions subsequent to the 1970 condemnation judgment can be *recharacterized* as a *new* inverse condemnation action. *See People v. Adamson*, 118 Cal.App.2d 714, 722–23, 258 P.2d 1020, 1025–26 (1953). It is "new" because their claims are based upon damages resulting from unkept promises to develop the property in a certain way, and these damages were allegedly not contemplated by the original award. *Id.*

California procedures are also "adequate," particularly since the state courts may award monetary damages for those of the Kinzlis' claims which are ripe. It is apparently unlikely that the Kinzlis would be awarded monetary damages in California for inverse condemnation claims based upon the enactment of land use regulation. *See Furey*, 780 F.2d at 1450 n. 1; *Martino*, 703 F.2d at 1147–48. This, however, is not dispositive for two reasons. First, as dis-

cussed in section II above, the Kinzlis' regulatory takings claim is not ripe for review. Second, the Kinzlis' claims based on the City's unkept promises are based on theories upon which they may proceed in California courts with the possibility of adequate monetary compensation. For example, the Kinzlis may argue in state court that the original condemnation award was predicated on the construction of certain improvements, such as the thoroughfare, as the City proposed. *People ex rel. Department of Public Works v. Schultz Co.,* 123 Cal.App.2d 925, 935–36, 268 P.2d 117, 124–25 (1954). They may further argue that they are therefore entitled to additional damages resulting from a change in the City's development plans. *Id.* California state courts are empowered to award such damages. *Adamson,* 118 Cal.App.2d at 722–23, 258 P.2d at 1025–26.

### VI

In light of *Hamilton Bank* and *Mac-Donald,* the Kinzlis' action was not ripe for adjudication. The district court therefore erred in reaching the merits of the Kinzlis' takings claim and equal protection claim. However, the district court correctly determined that the substantive due process claim was unripe, although we believe this conclusion is compelled by the absence of a meaningful application for development of the property. We also agree with the district court's conclusion that the Kinzlis' claims based upon the 1970 condemnation were not ripe. In light of these conclusions, the Kinzlis' claims should have been dismissed for lack of jurisdiction.[8]

REVERSED, with orders to VACATE decisions on the merits.

---

8. Therefore, the district court's grant of summary judgment to the City was improper.