Joseph CELENTANO

v.

CITY OF WEST HAVEN, et al.

Civ. No. N–90–577(AHN).

United States District Court,
D. Connecticut.

March 15, 1993.

Susan Wise, Williams & Wise, New Haven, CT, for plaintiff.

Michael P. Farrell, Deputy Corp. Counsel, West Haven, CT, for defendant.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This is a one count civil rights action pursuant to 42 U.S.C. § 1983 brought by Joseph Celentano ("Celentano") against the City of West Haven (the "City") and certain town officials. The action arises from the zoning of 97–99 Beach Street, a parcel of land owned by Celentano, which was designated "Open Space" for a period of years by the West Haven Planning and Zoning Commission (the "PZC"). Celentano alleges that the Open Space designation on the property was a mistake and was illegally maintained and continued by defendants in retaliation for Celentano's political and legal opposition to other land use decisions in violation of his First, Fifth, Ninth, and Fourteenth Amend-

ment rights. Currently pending is defendants' motion for summary judgment which was filed at the court's invitation after the case was mistried on June 2, 1992. Celentano opposes the motion. For the reasons stated below, the court GRANTS defendants' motion for summary judgment.

*Legal Standard of Review*

In a motion for summary judgment, the moving party bears the burden of establishing that no genuine issues of material fact are in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All factual inferences are drawn in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

*Facts*

Applying these principals, the court finds the following facts undisputed:

1. On August 16, 1962, Joseph Celentano and his wife Carol Celentano (collectively referred to as the "Celentanos") purchased a parcel of land at 97–99 Beach Street (the "property" or "Beach Street property") in West Haven, Connecticut. (Compl., ¶ 27.)

2. On December 17, 1964, the Celentanos conveyed the property to Ellsworth Glover ("Glover") and Richard Kozab ("Kozab"). (*Id.* at ¶ 28.)

3. On February 2, 1967, the PZC adopted a resolution creating "Open Space" district zoning. (*Id.* at ¶ 39; *see also* Filing No. 60, Def.'s Mem.Sup.Exs. A1–A3)

4. Effective March 1, 1967, the PZC designated the area in which the Beach Street property was located as Open Space. (*Id.* at ¶ 31.)

5. On July 11, 1968, Glover and Kozab conveyed the Beach Street property back to Carol Celentano. In turn, Carol Celentano conveyed the property to Joseph Celentano on April 18, 1974. (*Id.* at ¶ 32.)

6. In the summer of 1983, West Haven and the PZC adopted an Open Space and public facilities district regulation. Pursuant to this regulation, all land that was zoned Open Space within the City's boundaries was to be listed. The PZC listed the Open Space district along Beach Street as "OS–20, Morse Park." (*Id.* at ¶ 33.)

7. In 1985, Celentano was appointed a member of the PZC. Celentano served about two and half years on the PZC before resigning in 1987 to move to Florida. (Celentano Depo. at 10, Filing No. 68, Pltf's Ex. B.)

8. In 1986, Celentano submitted a site development plan on the Beach Street property to the PZC for review. The application was subsequently withdrawn. (10/7/86 Letter from Anthony Giordano to the PZC, Filing No. 60, Def.'s Mem.Sup., Ex. B ("Giordano Letter"); *see also* 6/5/90 Letter from Dwyer to Reizfeld, Filing No. 73, Pltf.'s Suppl. Mem. Opp., Ex. N ("Dwyer Letter").)

9. At a PZC meeting on February 10, 1987, defendant David Saldibar ("Saldibar"), Chairman of the PZC, read a letter from Deputy Corporation Counsel Mark DeGennaro ("DeGennaro") requesting that three areas within the City which were zoned Open Space be rezoned to allow reasonable use. Those areas were: (1) Beach Street adjacent to Morse park which included the Beach Street property; (2) Bull Hill lane; and (3) Armory. Celentano, although still a member of the PZC, was absent from this meeting. (Minutes of PZC meeting on 2/10/87, Filing No. 73, Pltf.'s Suppl.Mem. Opp., Ex. Q.)

10. On March 10, 1987, the PZC voted unanimously to have the staff pursue a change in the zoning of the Bull Hill Lane property from Open Space to residential. (Minutes of the 3/10/87 PZC Meeting, Filing No. 60, Def's Mem.Sup., Ex. D.)

11. At a meeting of the PZC on April 14, 1987, DeGennaro recommended that the PZC consider redrawing the boundaries of the

564

Open Space district in the Morse Park area because several properties, including the Beach Street property, were in his opinion, "improperly zoned" due to an error in the drawing of district boundaries on the zoning map. (Transcript of PZC meeting on 4/14/87 at 3–4, Filing No. 68, Pltf.'s Ex C.) DeGennaro stated that he realized about a year ago that the Beach Street property "could create a possible problem" due to the fact that it was zoned Open Space back in 1967 despite being privately owned. (*Id.* at 3.) DeGennaro further stated "that it [the Beach Street property] *may be improperly zoned and there may be all kinds of appeals and legal problems later on.*" (*Id.* at 4 (emphasis added).) DeGennaro concluded that a proposal before the PZC to combine "these problem areas" into one contiguous Shorefront Plan Development District (the "SPD District") provided a means for redressing the problem areas, including the Open Space designation of Beach Street. (*Id.* at 3.)

12. Celentano, although present at the April 14, 1987, PZC meeting, withdrew from consideration of the Beach Street area issue because he considered his ownership of the Beach Street property a possible conflict of interest. (*Id.* at 2.)

13. No formal action, however, was taken on the SPD District proposal. (4/6/87 Letter from Mark Degennaro to Charles Needle, Filing No. 68, Pltf.'s Ex. L.)

14. At a meeting on May 26, 1987, the PZC was notified by DeGennaro that the property formerly known as the Armory, and now privately owned by the Brophy–Ahern Development Company ("Brophy"), "needed to have a zone change from a public facilities zone." DeGennaro reported that the Armory's previous designation as a Special Development Zone had been invalidated by the Connecticut Courts leaving the Armory technically unzoned. DeGennaro recommended that "it is best left to the owner to come with an application." Chairman Saldibar requested that Mr. Brophy, the owner of the Armory, submit an application to the PZC concerning a designation. (Minutes of the 5/26/87 PZC Meeting, Filing No. 60, Def.'s Mem. Sup., Exs. G1, G2.)

15. On June 23, 1987 the PZC, by a three to one vote with one abstention, tabled Brophy's application to have the Armory rezoned. (Minutes of the 6/23/87 PZC Meeting, Filing No. 60, Def.'s Mem.Sup.Exs. F1, F2.)

16. Subsequently in 1987, on unspecified dates, the PZC rezoned the Blue Hill Lane and Armory properties for private use. (*See* Compl. ¶ 35; Filing No. 60, Def.'s Mem. Sup. at 16.)

17. From April 6, 1987 through February of 1989, the City and Celentano made several unsuccessful efforts to resolve the status of the Beach Street property via the SPD District proposal. (*See* Filing No. 68, Pltf.'s Exs. L, M.)

18. On June 5, 1990, Gerald Dwyer, Corporation Counsel for the City, sent a letter to Celentano's lawyer, Leonard C. Reizfeld, Esq., concerning the Beach Street matter. The letter stated in part:

It is my judgment that the City of West Haven has in no way violated any rights of Mr. Celentano with regard to this property. Mr. Celentano purchased the property after it was zoned Open Space and subsequently became a member of the P & Z and thereafter applied for a site approval plan when he knew or was obliged to know the [sic?] Regulations in his capacity as a Commission member.

*It is my suggestion that Mr. Celentano apply for a zone change to the Planning and Zoning Commission.*

(Dwyer Letter at 2 (emphasis added).)

19. At no time during his ownership of the Beach Street property did Celentano formally apply for a change of zone from the PZC. (*See* Aff. of James Hill, Filing No. 72, Def.'s Suppl.Mem.Sup., Ex. B ("Hill Aff.").)

20. On October 19, 1990, Celentano filed suit in federal court. (*See generally,* Compl.)

21. Effective April 15, 1992, the Beach Street property was rezoned single family residential, "R–2," pursuant to the adoption of a 1991 city-wide zoning ordinance by the City of West Haven. (*See* 3/9/93 Letter from Sue Wise to the Court setting forth a supplementary stipulation of facts (attached as "Appendix A").)

*Discussion*

[redacted] In taking the unusual step of declaring a mistrial and inviting defendants to file a dispositive motion after the pre-trial deadlines for such motions had run, the court sought clarification on two issues of law whose resolution it believes is a jurisdictional prerequisite [1] to the rendering of a final judgment in this case: (1) whether Celentano's claim is ripe for adjudication; and (2) if the claim is ripe, whether it is timely under the applicable statute of limitations in this case. Because the court finds that Celentano's claim is not ripe for adjudication, it need not consider whether Celentano complies with the applicable statute of limitations.

A. *Ripeness*

[redacted] At the heart of the ripeness issue is the uncontroverted fact that Celentano never formally petitioned the PZC to change the allegedly mistaken zoning designation of the Beach Street property. (*See* Hill Aff. at ¶ 2.) Defendants argue that Celentano's failure to formally petition the PZC to rectify this alleged zoning mistake is fatal to his civil rights claim. They insist that as a result of Celentano's failure to submit an application for a variance or zoning change no final government action was taken by the PZC or any of the named defendants with respect to the Beach Street property. Defendants conclude, therefore, that the absence of any final, definitive action on the status of the property renders Celentano's civil rights claim unripe for adjudication. The court agrees.

At the outset, the court notes and the parties agree that the complaint sets forth what amounts to a substantive due process and equal protection, "penumbra" type claim premised on arbitrary and capricious government conduct. Specifically, Celentano alleges that in February of 1987 the PZC acknowledged that the Open Space designation on the Beach Street property was both illegal and mistaken. He alleges that the PZC refused to rezone his Beach Street property while rezoning the Bull Hill Lane and Armory properties in 1987, two other properties also mistakenly zoned Open Space. Celentano contends that the refusal of the PZC to change the Open Space designation on his property until recently constituted "arbitrary and capricious" government action taken in retaliation for his political and legal opposition to the PZC on other land use decisions. Celentano concludes that defendants' conduct amounts to a violation of a penumbra of substantive constitutional rights as set forth in the First, Fifth, Ninth, and Fourteenth Amendments. In subjecting this action to ripeness review, therefore, the court is mindful that it evaluates Celentano's claim as one for substantive due process and equal protection violations predicated on arbitrary and capricious government conduct rather than as a takings claim under the just compensation clause of the Fifth Amendment. *See Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 96–97 (2d Cir.1992) (Oakes, C.J.) (distinguishing a substantive due process claim premised on arbitrary and capricious conduct from a substantive due process claim premised on a regulatory takings theory that a zoning regulation "has gone too far").

1. *Final Action Requirement*

[redacted] In *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473

1. It is settled law that ripeness is a jurisdictional prerequisite to the adjudication of a claim in federal court. *See Federal Election Comm'n v. Central Long Island Tax Reform Immediately Comm.,* 616 F.2d 45, 51 (2d Cir.1980) (a claim must be ripe to satisfy the case and controversy requirement of Article III and confer jurisdiction on a federal court to adjudicate that claim) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937)). A district court is free to evaluate whether a claim is jurisdictionally defective at any time during the course of litigation. *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); 5A Wright & Miller, § 1350 at 202. (lack of subject matter jurisdiction may be asserted at any time by the parties or the court, *sua sponte,* prior to, during, or after trial, even at the appellate level.) Litigants, moreover, cannot waive subject matter jurisdiction by express consent, conduct, or estoppel. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); 13 Wright & Miller, § 3522 at 66–67. Accordingly, although unusual, the court concludes that it is not precluded as matter of law from conducting a ripeness review of Celentano's claim at this late stage in the litigation.

**566**

U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the United States Supreme Court set forth a two-part test for evaluating the ripeness of "takings type claims" challenging municipal land use decisions. *See also Bongartz*, 980 F.2d at 95. "The first prong requires the government entity charged with enforcing the regulations at issue to have rendered a 'final decision.'" *Bongartz*, 980 F.2d at 95 (quoting *Williamson*, 473 U.S. at 186, 105 S.Ct. at 3116). The second prong requires a "plaintiff to have sought compensation if the state provides a 'reasonable, certain and adequate provision for obtaining compensation.'" *Id.*

Celentano insists that his claim is not subject to ripeness review under *Williamson* and its progeny. Specifically, Celentano argues that the alleged conduct, despite involving a disputed zoning designation, is distinguishable from the "takings-type claims" discussed in *Williamson* and *Bongartz*. He argues that his claim is more akin to the type of constitutional tort recognized under 42 U.S.C. § 1983 for which there is no exhaustion requirement. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Celentano concludes that defendants' concession that the Beach Street property was mistakenly zoned Open Space due to a defective zoning map is sufficient, by itself, to make the PZC's refusal to rectify such a mistake immediately actionable regardless of his failure to formally apply to the PZC for a change in zone. The court disagrees.

 It is settled law in this circuit that a substantive due process claim arising out of allegations that a municipal land use decision is "arbitrary and capricious" is not "immune from ripeness scrutiny." *Bongartz*, 980 F.2d at 96–97. Admittedly, a substantive due process claim premised on arbitrary and capricious government conduct is not subject to the exhaustion requirement applicable in regulatory takings cases under the Just Compensation Clause. *Id.* at 97. Indeed, "[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable." *Williamson*, 473 U.S. at 192, 105 S.Ct. at 3119. The exhaustion re-

quirement that a plaintiff seek compensation pursuant to state administrative and legal remedies prior to challenging a municipal zoning decision in a federal court, moreover, "is ... derived from the Takings Clause [citation omitted] to which a substantive due process claim, premised on arbitrary and capricious government conduct, is largely unrelated." *Bongartz*, 980 F.2d at 97.

 A substantive due process claim "premised on arbitrary and capricious government conduct, however, is subject to ... the final decision prong of the *Williamson* ripeness test." *Id.; see also Del Monte Dunes, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990) ("In evaluating the ripeness of due process or equal protection claims arising out of the application of land use regulations, [courts] employ the same final decision requirement that applies to regulatory taking claims.") Unlike, the exhaustion requirement in takings cases, the "finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" on the property owner. *Williamson*, 473 U.S. at 193, 105 S.Ct. at 3120. Simply put, "[u]nless a court has a final decision before it, it cannot determine whether a claimant was deprived of property and whether the government conduct was arbitrary or capricious." *Bongartz*, 980 F.2d at 97. Similarly, "only when [the property owner] receives a ' "final definitive [decision] regarding how [the local agency] will apply the regulations" ' to [the property in issue] will the district court be able to review 'the alleged dissimilar treatment accorded similarly situated landowners.'" *Landmark Land Co., Inc. v. Buchanan*, 874 F.2d 717, 722 (10th Cir.1989) (quoting *Herrington v. County of Sonoma*, 857 F.2d 567, 569 (9th Cir.1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989)) (citations omitted); *see also Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1455–56, *modified on other grounds*, 830 F.2d 968 (9th Cir.1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988).

While the policies underlying the exhaustion and final decision requirements in *Williamson* "often overlap," 473 U.S. at 193, 105

S.Ct. at 3120, the rationale behind the final decision requirement is particularly applicable to Celentano's case. Here, the court cannot determine with any reasonable precision whether the defendants acted arbitrarily and capriciously towards Celentano until it understands what specific final government action or decision Celentano challenges. Similarly, the court cannot evaluate whether similarly situated landowners were treated differently than Celentano until it understands how the PZC and the City applied the zoning process to his Beach Street property. Finally, the court must consider "the economic impact of the challenged action and the extent to which it interferes with [Celentano's] reasonable investment-backed expectations." *Id.* at 191, 105 S.Ct. at 3118. "Those factors simply cannot be evaluated until the [PZC] has arrived at a final, definitive position regarding how it will apply the regulations at issue to the [Beach Street Property]." *Id.*

Celentano's insists emphatically that because he brings this action pursuant to 42 U.S.C. § 1983 he "stands no differently than any other civil rights plaintiff" with regards to final action and ripeness review. Celentano concludes that because there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action, *see, e.g., Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), he need not file a formal application with the PZC for a change of zone at the Beach Street property before seeking relief in this court. The court disagrees.

 It is settled law, that a civil rights challenge to a zoning designation premised on a theory of arbitrary and capricious government conduct and brought pursuant to § 1983 does not obviate the need for a final,

definitive decision by a local agency in issue. *Williamson,* 473 U.S. at 192, 105 S.Ct. at 3119; *see also Kinzli,* 818 F.2d at 1454 (developer's failure to secure or even attempt to secure approval of a plan or variance from local agency renders substantive due process and equal protection claims unripe even if brought pursuant to § 1983). In fashioning such an argument, Celentano confuses the need for exhaustion of available administrative compensation remedies in just compensation cases with the separate and "distinct" requirement that "administrative action must be *final* before it is judicially reviewable." *Williamson,* 473 U.S. at 192, 105 S.Ct. at 3119 (emphasis added). Celentano's reliance on *Patsy* for the assertion that a plaintiff is not subject to ripeness review under *Williamson,* therefore, addresses only the inapplicability of the exhaustion requirement and in no way obviates the need for final action in a § 1983 action. *Id.* at 193, 105 S.Ct. at 3120 (rejecting the identical argument).[2]

To the extent Celentano argues that defendants' failure to rectify an allegedly mistaken and illegal zoning designation distinguishes this case from the "traditional" zoning disputes discussed in *Williamson* and its progeny, disputes Celentano contends involve "discretionary" rather than "mistaken" application of zoning regulations, the distinction is without support in the context of ripeness review. Indeed, Celentano offers no case, nor has the court found any authority, for the view that the final action requirement is inapplicable to zoning disputes arising from a mistaken rather than discretionary application of land use regulations. *Cf. Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1576 n. 11 (11th Cir.1989) (dicta) (noting that "[i]t is not at all clear" the reapplication requirement in *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91

---

2. Celentano's reliance on *Falls v. Town of Dyer,* 875 F.2d 146 (7th Cir.1989) (Easterbrook, J.) is also misplaced. In *Dyer,* plaintiff brought a § 1983 action against a town for its enforcement of a portable sign ordinance. *Id.* at 147. Plaintiff, a scofflaw, predicated his claim on a theory of "selective prosecution" contending that the ordinance was selectively enforced against him resulting in his prosecution and subsequent conviction. *Id.* Unlike Celentano, however, plaintiff in *Dyer* did not challenge the validity of the

ordinance's preclusion of portable signs on his property *per se.* Rather, *Falls* involved a constitutional challenge to the locality's decision to prosecute the plaintiff pursuant to the zoning ordinance. Such a decision is clearly a final, reviewable government act. Accordingly, because the selective prosecution challenge in *Falls* presents none of the ripeness concerns present in this case, the court concludes that *Dyer* sheds no light on the applicability of the final action requirement in this case.

L.Ed.2d 285 (1986), should apply to substantive due process claims.) To exempt Celentano's claim from the *Williamson* final decision requirement on such a distinction, moreover, would permit a disgruntled landowner to by-pass or preempt the local agency charged with adjudicating the validity of zoning designations in favor of a federal district court. Because it can find no law in this or any other circuit to support the view that a federal court should function as a court of first resort in all local zoning disputes where a land owner complains that a zoning designation was "illegal" rather than "discretionary," the court concludes that the final action requirement under *Williamson* applies to Celentano's claim in this case.

### 2. *Application of Final Action Requirement*

The determination that Celentano's claim is not immune from the final action requirement under ripeness scrutiny, however, does not end the court's inquiry. The court must next determine whether the defendants' alleged conduct constitutes final government action despite the failure of Celentano to formerly apply for a zoning change. The court finds that it does not.

To "help define the contours of a 'final decision,'" *Bongartz*, 980 F.2d at 97, the court turns first to *Williamson*. In *Williamson*, the Supreme Court held that a developer's failure to seek a zoning variance following a county zoning commission's rejection of his plans for a residential sub-division ran afoul of the final decision requirement under the ripeness inquiry. The Court noted that, despite the commission's formal refusal to approve the developer's plan, the plaintiff could have sought "variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations." *Williamson*, 473 U.S. at 188, 105 S.Ct. at 3117. Instead, the developer refused to seek variances until after the commission approved the proposed plat. The Court reasoned:

> [I]n the face of [the developer's] refusal to follow the procedures for requesting a variance, and its refusal to provide specific information about the variances it would require, respondent hardly can maintain that the Commission's disapproval of the preliminary plat was equivalent to a final decision that no variances would be granted.

*Id.* at 190, 105 S.Ct. at 3118. Thus, despite the developer's insistence "that it 'did everything possible to resolve the conflict with the commission,'" the Court concluded that the developer had not obtained a final decision. *Id.* at 188, 190, 105 S.Ct. at 3117, 3118.

In addition, two other parameters of the final decision requirement are helpful to the court in its review of Celentano's claim. First, an agency's formal denial of a landowner's particular plan to develop a property is not, by itself, sufficient to constitute a final decision ripe for review by a federal court. Indeed, a local agency's denial of a developer's zoning application is not ripe for review where the possibility exists that "some development will be permitted." *MacDonald*, 477 U.S. at 351–352, 106 S.Ct. at 2567; *see also Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 136–137, 98 S.Ct. 2646, 2665, 57 L.Ed.2d 631 (developer's claim unripe where, despite rejection of initial development plan, it is unclear whether agency would deny approval for all plans or uses); *Bongartz*, 980 F.2d at 98–99 (substantive due process claim unripe because developer of subdivision failed to explore other development possibilities and resubmit application to zoning board for approval); *Kinzli*, 818 F.2d at 1454 (landowner's claim, even if brought under § 1983, requires a rejection of a development plan and denial of a variance to be ripe for adjudication).

Second, at least one circuit recognizes a "futility exception" to the threshold requirement of a final decision. *Id.* (citing *Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n. 2 (9th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983); *see also Bongartz*, 980 F.2d at 98. "Under this exception, the requirement of the submission of a development plan is excused if such an application would be an 'idle and futile act.'" *Kinzli*, 818 F.2d at 1454 (quoting *Martino*, 703 F.2d at 1446 n. 2). Although the precise test as to

whether the futility exception applies in a particular case has yet to be fully articulated, "*at least one* application must be submitted before the futility exception applies." *Id.* at 1454 (emphasis added). The submitted application, moreover, must be "a meaningful application." *Id.* at 1455.[3]

 Applying these parameters to the facts in this case, the court concludes that Celentano failed to obtain a final, reviewable decision from the PZC or any other local agency. First, it is uncontroverted that Celentano never filed an application to change the Open Space designation on the Beach Street property nor attempted to obtain some form of a variance. Although Celentano submitted a site plan in 1986 for development of an office building on the property, that application was withdrawn. (*See* Giordano Letter; Dwyer Letter.) Celentano, moreover, chose not to file an application for a change of zone despite a request by the City's Corporation Counsel that he do so in 1990. (Dwyer Letter.) Admittedly, Celentano made several informal efforts to resolve the allegedly improper zoning of his Beach Street property with the PZC, the City, and its attorneys. An unsuccessful effort to negotiate an informal resolution of a zoning dispute with a local agency, however, does not, by itself, constitute final government action. *Cf. Williamson,* 473 U.S. at 188–190, 105 S.Ct. at 3117–3118; *Kinzli,* 818 F.2d at 1454–1456 (final decision requires formal rejection of development plan and variance). Thus, in the face of Celentano's refusal to formally apply for a variance or change in zone from the appropriate City agency, he cannot maintain that the failure of the PZC to rezone his property on its own initiative is "equivalent to a final decision that [no change in zone] would be granted." *Williamson,* 473 U.S. at 190, 105 S.Ct. at 3118.

 Similarly, defendant's allegedly mistaken designation of the Beach Street property in 1967, alone, cannot satisfy the final decision requirement. Assuming that the Open Space designation was in fact mistaken, an assumption that the court endorses only for the purpose of considering this motion, that designation was made at a time when Celentano did not own the Beach Street property. Celentano, moreover, only became aware of a possible illegality in the Open Space designation in 1986. At that time, it was incumbent upon Celentano to make a meaningful application to the PZC to correct the allegedly improper Open Space designation. Celentano's failure to make such an application, despite the direct urging of Gerald P. Dwyer, the Corporation Counsel to the City of West Haven, (*see* Dwyer Letter), leaves the court to speculate just what tangible, concrete governmental action he complains of other than the Open Space designation itself, a designation made *prior* to Celentano's ownership of the property. This is "the same sort of speculation that the ripeness doctrine prohibits." *Kinzli,* 818, F.2d at 1454. It is difficult, if not impossible, therefore, to accept Celentano's claim that a possibly mistaken zoning designation made in 1967 constitutes an arbitrary and capricious, retaliatory government act taken against him at a time when Celentano did not even own the Beach Street property.

 Third, Celentano's claim that the filing of a formal application would be a futile act in light of the defendant's predisposition toward him is unpersuasive. Celentano's reliance on private or off the record comments by various defendants is insufficient to demonstrate that the filing of a formal application would have been a futile or idle act. *See Kinzli,* 818 F.2d at 1455; (*see also* Dwyer Letter.) Celentano's refusal to file at least one, meaningful application with the PZC, moreover, precludes him, as matter of law, from raising the futility exception to the final

---

3. The general concept that a party is not required to obtain a final decision if such efforts are "futile or idle" appears to be good law in this circuit as well. *See Bongartz,* 980 F.2d at 98 (interpreting the Supreme Court's holding that the developer's claim in *Lucas v. South Carolina Coastal Council,* — U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), was ripe for adjudica- tion as driven partly by the futility exception to the final decision requirement.); *see also, Kinzli,* 818 F.2d at 1454–1455 (noting that the Supreme Court in *MacDonald* "arguably gave approval to the California Court of Appeals' conclusion that the futility test is not met where a 'meaningful application has not yet been made.' ").

action requirement. *Kinzli,* 818 F.2d at 1455.

Finally, Celentano's insistence that other, similarly situated landowners were granted zoning changes without the filing of formal applications fails to alter the justiciability of this action. The PZC's redesignations of other properties on its own initiative have no bearing on whether Celentano has obtained a final decision on the zoning of the Beach Street property. Admittedly, the PZC's redesignation of the other properties *sua sponte* could be evidence of discriminatory conduct by the defendants *if* the PZC had made a final determination on the Beach Street property.[4] Where no formal determination on *that* property exists, however, Celentano's equal protection challenge to a zoning designation, like his substantive due process claim, "is not ripe for consideration by the district court 'until planning authorities ... make [such] a final determination on the status of *the property.'*" *Kinzli* 818 F.2d at 1455 (quoting *Norco Construction, Inc. v. King County,* 801 F.2d 1143, 1145 (9th Cir. 1986)) (emphasis added). Because Celentano has not obtained a formal, final, definitive decision by the PZC rejecting any change in the Open Space zoning designation at the Beach Street Property, therefore, Celentano's claim, whether predicated on substantive due process or equal protection, is not ripe for adjudication.

*Conclusion*

For the reasons stated above, the court GRANTS defendants' motion for summary judgment [Filing No. 59] and DISMISSES Celentano's action as unripe for adjudication.

SO ORDERED.

APPENDIX A

WILLIAMS AND WISE
 ATTORNEYS AT LAW

JOHN R. WILLIAMS
SUE L. WISE

DIANE POLAN
DAVID B. BACHMAN
FREDERICK M.
O'BRIEN

51 ELM STREET
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
TELECOPIER (203) 776-9494

MARY ANN POTONIEC
ADMINISTRATIVE
 ASSISTANT
LESLIE ARTHUR
OFFICE MANAGER

March 9, 1993

Honorable Alan H. Nevas
United States District Judge
915 Lafayette Blvd.
Bridgeport, CT 06604
RE: Celentano v. West Haven
 No. N–90–577 (AHN)

Dear Judge Nevas:

I spoke suggested to Peter, I believe earlier this week, that the parties in the above-captioned case could stipulate to the following facts:

1. The City of West Haven instituted a City-wide zoning change in 1991.
2. The City-wide zoning change affects the Celentano Beach Street property.
3. Since the adoption of the City-wide zoning ordinance the Celentano property has not been designated "open space."

4. The court notes that the record appears to contradict Celentano's assertion that no other, similarly situated property owner filed an application for a zoning change. The record suggests that at least the owners of the Armory property filed a formal application with the PZC. (*See* Filing No. 60, Def.'s Mem. Sup., Exs. F1, F2, G1, G2.)

4. The 1991 zoning ordinance, designates the Celentano property as R–2, which is single family residential.

Mr. Farrell and I have agreed on this language and we will file a fully executed stipulation as soon as we can move the documents though the mails.

Sincerely yours,
SUE L. WISE

SLW/slw
cc: Attorney Michael Farrell

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH CELENTANO | : | |
| VS. | : | CIVIL NO. N–90–577 (AHN) |
| CITY OF WEST HAVEN, ET AL. | : | MARCH 9, 1993 |

STIPULATION

The parties, through the undersigned counsel, hereby stipulate to the following facts:

1. The City of West Haven instituted a City-wide zoning change in 1991, effective April 15, 1992.
2. The City-wide zoning change affects the Celentano Beach Street property that is the subject of the present litigation.
3. Since the adoption of the City-wide zoning ordinance the Celentano property has not been designated "open space."
4. The 1991 zoning ordinance, designates the Celentano property as R–2, which is single family residential.

THE PLAINTIFF

BY

_____
SUE L. WISE
Williams and Wise
New Haven, CT 06510