Filed 6/14/23  Forat v. City of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BEHZAD FORAT et al., | B313816 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS163322) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant and Robert S. Draper, Judges.  Affirmed.

Gaines &  Stacey, Fred Gaines and Lisa A. Weinberg for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Terry P. Kaufmann Macias, Assistant City Attorney, Steven N. Blau and Morgan L. Hector, Deputy City Attorneys, for Defendants and Respondents.

Behzad Forat and Studio City Car Wash, Inc. (SCCW) (collectively appellant) appeal from a judgment entered after appellant's claims against respondents City of Los Angeles and City Council of the City of Los Angeles (city council) (collectively city) were dismissed following demurrer and summary judgment proceedings.  Appellant sought a writ of mandate pursuant to Code of Civil Procedure section 1094.5 and made claims for inverse condemnation (regulatory taking), promissory estoppel, declaratory relief, violation of civil rights, and violation of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) (Brown Act)[1] against the city after the city rescinded its earlier action to consider a general plan amendment (GPA) and zone change (ZC) concerning property owned by appellant.

The trial court sustained without leave to amend the city's demurrer to the writ cause of action.  Appellant's fourth and sixth causes of action were adjudicated in favor of the city following trial.

Following reassignment of the matter to a general civil trial court after adjudication of the writ and declaratory relief matters, the trial court sustained demurrers to the estoppel and civil rights claims without leave to amend.  The court later granted summary judgment in favor of the city on appellant's remaining claim for regulatory taking.  The trial court awarded the city $32,500 in attorney fees for appellant's failure to properly admit the truth of certain requests for admission.

Appellant contends that the trial court erred in failing to compel the city to produce the transcript of its closed session to

---

[1]     All further statutory references are to the Government Code unless otherwise noted.

2

the trial court for in camera review. Appellant further challenges the judgments entered against him on all his claims against the city and argues that the court erred in awarding attorney fees to the city.

We find no error and affirm the judgment.

## BACKGROUND

Appellant purchased three adjacent parcels of vacant hillside land totaling about 19 acres off of Cahuenga Boulevard adjacent to Lake Hollywood (property) in 2007.[2] Each parcel was zoned RE40 and subject to a minimum residential land use designation under the city's general plan, the Mulholland Scenic Parkway Specific Plan, and Los Angeles Municipal Code section 12.21.C.8 and 10 (hillside regulations). These existing regulations permit one-family dwellings, but not multiple dwelling apartment complexes. Appellant understood before purchasing the properties that all three were zoned RE40.

In 2014, appellant met with city Councilmember Tom LaBonge, then the representative for the city's Fourth Council District, to discuss the use of Forat's property located in that district. Appellant sought a GPA and ZC in order to develop multi-unit residences on the properties. After discussions held over several months, appellant agreed to donate 10 acres of the property to the city for parkland and trail usage if the city were

---

[2] Forat is the president of SCCW. Forat acts on SCCW's behalf with regard to the two parcels owned by SCCW (Assessor Parcel Nos. 5577-016-001 and 5577-016-006), and on his own behalf for the third parcel owned by Forat personally (Assessor Parcel No. 5577-016-002).

to permit appellant to build an apartment building on the remaining acreage along Cahuenga Boulevard.

Following those discussions, on October 29, 2014, Councilmember LaBonge presented a motion that the "Department of General Services be instructed and authorized to enter into negotiations with the current owner of the property in order for the City to acquire the parcel for ultimate preservation as public open space." LaBonge further moved that the city council "instruct the Planning Department, in consultation with Council District 4, to initiate consideration of a General Plan Amendment and Zone Change, and other City Planning approvals if needed, including the preparation and adoption of any required ordinance, to rezone Los Angeles County Assessor's Parcel No. 5577-016-006 as open space and Los Angeles County Assessor's Parcel Nos. 5577-016-001 and 5577-016-002 as R3."[3]

On March 18, 2015, the city council adopted the motion "to initiate consideration of a General Plan Amendment and Zone Change, and other City Planning approvals if needed, including the preparation and adoption of any required ordinance, to rezone Los Angeles County Assessor's Parcel Nos. 5577-016-001

---

[3]     A GPA and ZC may be initiated at the discretion of a majority vote of the 15-member council or nine-member city planning commission, or by the director of planning. A GPA is a discretionary legislative act, which requires reports, recommendations, public hearings and final adoption within the legislative discretion of the city council by vote. Although residents may not initiate a GPA, residents may request initiation. A ZC similarly is a legislative action that requires reports, recommendations, and public hearings, among other things. The city retains full discretion to approve or deny land use entitlements for property.

and 5577-016-002 as R3 and to rezone Los Angeles County Assessor's Parcel No. 5577-016-006 as open space should the City ultimately acquire that parcel."

For the next year both the city planning department and appellant worked on entitlement studies, including a draft environmental impact report (EIR) and traffic study.

On July 10, 2015, appellant submitted a master land use application and environmental assessment form for 250 townhome apartments.

In July 2015, Councilmember David Ryu replaced Councilmember LaBonge.

In October 2015, the Hollywood Hills West Neighborhood Council (HHWN Council) sent a letter to Councilmember Ryu requesting that the council rescind its March 2015 initiation. The letter cited concerns that the project would be inappropriate for the neighborhood and would have a negative impact on traffic, infrastructure, and wildlife corridors.

On March 22, 2016, Councilmember Ryu presented a rescission motion for the city council to consider as a means of rescinding its initiation, citing the HHWN Council's letter. The rescission motion was scheduled for hearing on March 29, 2016. Following receipt of two letters from appellant's counsel outlining appellant's opposition to the motion, the hearing was moved to April 1, 2016.

One of the letters, dated March 28, 2016, threatened litigation if the council rescinded the initiation. The letter indicated that appellant had incurred "over $300,000 in out of pocket expenses . . . in reliance on the City's prior action," and thus requested that the city allow the application to proceed to hearing and decision. The letter specified that "[t]he termination

of the current application process will cause our client to suffer immediate monetary damages.  Our client will seek to be reimbursed by the City for all such damages."  The second letter, dated March 31, 2016, suggested "compromise proposals" so that appellant's "$300,000 investment will not go to waste."  The letter reiterated that appellant would "suffer immediate monetary damages" if the application process were terminated and would "have no choice but to seek to be reimbursed by the City for all such damages."

At the April 1, 2016 city council meeting, members of the public spoke against the project.  Following eight minutes of public comment, the city council called a closed session pursuant to section 54956.9, subdivisions (d)(2) and (e)(5) in order to confer with legal counsel concerning "significant exposure to, and threat of, litigation."  (Boldface omitted.)  The closed session lasted nearly 90 minutes.  Following the closed session, the city council convened in open session.  Members of the public spoke further against the proceeding.  Forat and his attorney also provided testimony during the process.

Following the proceedings the council voted in open session to adopt the rescission motion.

On April 19, 2016, a letter was sent by appellant to the city council alleging that the April 1, 2016 closed session violated the Brown Act.  Appellant "demand[ed] that the City Council cure and correct the illegally taken action by formally and explicitly withdrawing its April 1, 2016 Motion and conducting a new hearing on the Motion at which all Council discussion on the matter is made in public and all prior communications among the Councilmembers . . . are fully disclosed . . . ."  The letter threatened to "seek a judicial invalidation of the challenged

6

action," plus attorney fees, if the city council failed to cure the alleged violation.

On May 10, 2016, the city attorney responded to appellant's letter. Without admitting that a Brown Act violation occurred, in the interest of avoiding litigation, the city attorney informed appellant that the city placed on the May 13, 2016 agenda a motion to rescind the action of April 1, 2016. If the action were rescinded, the city council would then reconsider its rescission of the March 2015 action concerning the rezoning of appellant's parcels.

On May 13, 2016, the city council held a public hearing on Councilmember Ryu's two consecutive motions. The motion to rescind the city's April 1, 2016 rescission motion passed 11-0. The council thereafter voted again to rescind its March 2015 action.

On May 17, 2016, appellant sent a letter to the city council stating that the actions taken on May 13, 2016, by the city council did not cure or correct the original Brown Act violation, but exacerbated it. The letter noted that the council limited public comment to two minutes per speaker, "effectively eliminating meaningful public comment." Appellant noted that to cure and correct the Brown Act violation, the council would have to conduct a new hearing at which all council discussion was made public, including all prior communications among the council members. Appellant warned that inaction may leave appellant with no choice but to initiate judicial action.

On June 15, the city attorney responded that "the Brown Act patently was not violated on May 13, 2016," and the council would "take no further 'curative' action on this matter."

7

# PROCEDURAL HISTORY

Appellant filed a verified petition for writ of mandate and complaint against the city on June 28, 2016. Appellant asserted five causes of action: (1) writ of mandate pursuant to Code of Civil Procedure section 1094.5, seeking an order requiring the city to set aside the April 1, 2016 recission motion and the May 13, 2016 rescission motion and ordering the city to complete the process approved in the March 2015 action; (2) inverse condemnation—regulatory and physical taking; (3) promissory estoppel seeking an order estopping the city from rescinding the March 2015 action and requiring it to complete the process approved in the March 2015 action; (4) declaratory relief as to whether the city had the right to rescind the March 2015 action or was required to move forward with it; (5) violation of appellant's civil rights, including substantive and procedural due process rights; and (6) violation of the Brown Act.

**The city's first demurrer**

On September 15, 2016, the city filed a demurrer to all six claims. On the same date, the court ordered the second, third and fifth causes of action in the petition stayed pending resolution of the remaining causes of action. The demurrer was ordered to proceed on the first, fourth, and sixth causes of action only.

The court sustained the demurrer without leave to amend as to the first cause of action for writ of mandamus. The court noted that the city's actions were not subject to administrative mandamus, nor did appellant present facts that established a vested right to compel the city to take certain action.

The demurrer was overruled as to the fourth and sixth causes of action.

**Discovery**

Appellant served requests for production of documents on the city and city council seeking two categories of documents: (1) all recordings of the closed session conducted on April 1, 2016; and (2) all notes, minutes, transcripts or other documents relating to the discussion in the closed session on April 1, 2016.

The city objected, citing the attorney-client privilege. Appellant brought a motion to compel, which the city opposed. The trial court denied the motion to compel, observing that it could not "order disclosure of attorney-client privileged communications, or even review documents *in camera* in order to evaluate the claim of privilege unless the privileged documents are voluntarily produced." The court cited Evidence Code section 915, subdivision (a). However, the court ordered a privilege log for the April 1, 2016 closed session and the production of, and privilege log for, any redacted minutes. At the hearing, the court asked that the city "be fairly specific . . . in the topics that are being discussed as to why they are privileged or not in your privilege log."

On December 30, 2016, the city produced a 10-page privilege log, which showed every page of the 95-page transcript discussed threatened litigation, and claimed both attorney-client privilege and privilege pursuant to section 54956.9.

In April 2017, appellant brought a second motion to compel further responses to the request for production of documents. The city opposed the motion. On May 9, 2017, the court adopted its tentative decision denying the motion, having found that the city's privilege log was noncompliant with its order, as the city provided a single sentence to describe the subject matter discussed for every topic. The court had instructed the city to

provide more specificity so that the court could evaluate whether the topics were privileged. Despite the lack of compliance, the court denied appellant's motion, noting that appellant was not entitled to any portion of the minutes or transcript from the closed session. The court stated its position that appellant needed to show good cause for the court to review the minutes in camera.

Appellant then brought a third motion to compel, asking the court to compel production of the closed session transcript and a detailed privilege log for in camera review. The city opposed the motion. After a hearing on September 12, 2017, the court granted appellant's motion, finding the city had not complied with its prior order and ordering the city to provide a more detailed privilege log.

On November 3, 2017, the city filed its privilege log and a declaration from Deputy City Attorney Strefan Fauble, who was present at the April 1, 2016 closed session and attested that only privileged communications concerning the threatened litigation were discussed at that time. The trial court ordered the city to produce a declaration from Fauble, as to whether certain categories of discussions took place in the closed session, and a revised privilege log providing such additional detail.

On January 16, 2018, the city filed a revised privilege log with a further declaration of Fauble that confirmed all discussions were "in response to the threatened litigation," and at no point in the closed session did any council member agree or commit or direct other council members as to how to vote.

Appellant filed a final motion to compel in March 2018, asserting that the Fauble declaration showed that many portions of the April 1, 2016 transcript were not privileged and asked that

the court order the city to produce a transcript of portions of the closed session for in camera review. Appellant also sought sanctions. The city opposed the motion.

On April 17, 2018, the trial court heard and decided appellant's motion. The court denied the motion for in camera review of any portion of the closed session transcript. It found the Fauble declaration and log were sufficient for the trial court to find that the entire closed session transcript was subject to the attorney-client privilege and therefore was not subject to in camera review by the court.

**Writ trial—Brown Act and declaratory relief causes of action**

The parties briefed the fourth and sixth causes of action for declaratory relief and violation of the Brown Act. Following the May 28, 2019 trial, the trial court issued a written decision denying both claims. The court reiterated that appellant had not shown a violation of the Brown Act and found that appellant was not entitled to set aside the April 1 or May 13, 2016 actions of the city council. The trial court lifted the stay on the second, third and fifth causes of action.

The damages portion of the case was reassigned to a general civil trial court.

**The city's second demurrer**

The city filed an amended demurrer to appellant's second (takings), third (promissory estoppel), and fifth (civil rights/due process) causes of action. On December 10, 2019, the trial court sustained with leave to amend the city's demurrers to the third and fifth causes of action and overruled, in part, the demurrer to the takings claim. Specifically, the demurrer to the takings claim was overruled as to the $400,000 in investments appellant made

11

in experts and environmental review, but was sustained as to the loss of appellant's alleged $30 million sale price.

On December 20, 2019, appellant filed a first amended petition and complaint (FAPC).

**The city's third demurrer**

On February 19, 2020, the city again demurred to the second, third, and fifth causes of action. Following briefing, the trial court sustained without leave to amend appellant's third cause of action for promissory estoppel and fifth cause of action for violation of due process.

As to the third cause of action for promissory estoppel, the court found appellant failed to allege an actionable promise. As to the fifth cause of action (violation of due process), the trial court found appellant had failed to allege a protected property interest for the due process claim.

The court overruled the city's demurrer as to the second cause of action for inverse condemnation/takings, noting that the FAPC alleged that appellant had been called upon to sacrifice all economically beneficial uses of the property and that the city refused to consider alternatives. In sum, the allegations were that the city "effectively rejected all development proposals on [appellant's] property." The court noted that it was required to accept these allegations as true.

On July 14, 2020, the city filed its answer to the regulatory takings claim.

**The city's summary judgment motion**

On November 4, 2020, the city moved for summary judgment on appellant's takings claim, arguing that the claim was not ripe because appellant never received a final and authoritative determination of the type and intensity of

12

development legally permitted on the property. Appellant opposed the motion, arguing that there were disputed issues of material fact as to whether the city would not allow development of the property with a use that is "physically and financially feasible."

Following argument at the February 9, 2021 hearing, the court adopted its tentative ruling as the final ruling of the court. Summary judgment was granted, as the court found appellant had failed to show an issue of material fact precluding summary judgment on the ripeness issue. The court noted that the city presented evidence that appellant had not attempted to develop the property under its current zoning rules or any other allowed use under existing regulations. Further, the city had made no final decision as to the nature and scope of development that would be allowed. The court found that appellant's claim could not be ripe until appellant "attempts development and is prohibited from developing."

**Judgment and attorney fees**

On April 26, 2021, the trial court entered judgment for the city.

On May 6, 2021, the city filed a motion for an award of attorney fees of $91,550 for appellant's failure to admit the truth of matters in response to requests for admission pursuant to Code of Civil Procedure section 2033.420. The city argued that appellant's refusal to admit the truth of matters of substantial importance to the disposition of the case was without reasonable basis. Appellant opposed the motion. On August 9, 2021, the trial court granted the city's attorney fees in the amount of $32,500, finding that the city was entitled to attorney fees under Code of Civil Procedure section 2033.420 based on appellant's

failure to admit that the city had not made it impossible to develop the parcels of land or to undertake development of any kind.

On October 31, 2021, the trial court entered an amended judgment to include the fee award plus an additional $10,424.94 in costs.

**Appeal**

On June 28, 2021, appellant filed a notice of appeal from the judgment of dismissal following the summary judgment motion. On December 1, 2021, appellant filed a motion in this court seeking to include the amended judgment entered after the original appeal was filed. The city did not oppose the motion, and on December 14, 2021, this court granted appellant's request that the appeal encompass the amended judgment including the award of attorney fees.

## DISCUSSION

Appellant challenges the trial court's decision failing to compel the city to produce the transcript of its closed session to the trial court for in camera review. Appellant also contests the trial court's decisions on all three of appellant's damages claims, as well as the trial court's decision to sustain the demurrer to the writ cause of action without leave to amend. Appellant further argues that the award of attorney fees to the city was erroneous.

We discuss the issues in the same order as they are presented in the parties' briefs.

**I.    Discovery orders denying appellant's motions to compel**

Appellant first argues that the trial court erred in failing to compel the city to produce the transcript of its April 1, 2016

14

closed session for in camera review. During discovery, appellant sought to have the city produce the transcript of the hearing for the trial court to review and make an initial determination of whether the Brown Act was violated. Appellant argues that the trial court erred as a matter of law by concluding that the entire closed session was privileged and that it had no authority to review the transcript.

As set forth below, we conclude that the trial court did not err in that hearing.

### A. *Standard of review*

Generally, we review discovery orders for abuse of discretion. (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*Ibid.*)

Statutory interpretation to determine the meaning of the Brown Act presents a question of law subject to independent review. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912 (*Shapiro*).) When the issue on appeal is whether actions taken violated the Brown Act, review is de novo. (*Furtado v. Sierra Community College* (1998) 68 Cal.App.4th 876, 880.) In *Furtado*, the plaintiff argued that the Brown Act had been violated because her employer's board met in closed session rather than open public meeting when it voted not to renew her contract. (*Ibid.*) The parties disagreed over the meaning of an exception to the open meeting requirements for discussion of certain personnel issues. In resolving the issue, the trial court analyzed the statutory language. (*Id.* at pp. 881-883.)

15

To the extent that our review involves analysis of statutory language, or a determination of whether the city's actions violated the Brown Act, we apply the de novo review standard. We review any factual questions for substantial evidence. (*Taxpayers for Livable Communities v. City of Malibu* (2005) 126 Cal.App.4th 1123, 1126.) However, in assessing the trial court's denial of appellant's motions to compel, we apply the abuse of discretion standard.

**B.      *Overview of relevant provisions of the Brown Act***

The Brown Act is designed to "ensure the public's right to attend the meetings of public agencies" and "to facilitate public participation in all phases of government decision making." (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 293.) "It is the intent of the law that [public agencies'] actions be taken openly and that their deliberations be conducted openly." (§ 54950.)

The Brown Act sets forth specific requirements regarding the notice and conduct of any public body. For example, at least 72 hours before each meeting, a legislative body must post an agenda containing a brief general description of each item of business to be transacted or discussed, including items to be discussed in closed session. (*Shapiro, supra*, 96 Cal.App.4th at p. 919.) In a properly noticed closed session, the legislative body may only consider those matters covered in the statement of items to be considered in that closed session. (*Id.* at p. 922.) The legislative body must publicly report any action taken in closed session and the vote or abstention of every member present. (§ 54957.1, subd. (a).) Generally, "[s]tatutory exceptions authorizing closed sessions of legislative bodies are construed

16

narrowly and the Brown Act 'sunshine law' is construed liberally in favor of openness in conducting public business."  (*Shapiro, supra*, 96 Cal.App.4th at p. 917.)

The Brown Act preserves a city's right to confer with counsel regarding threatened litigation.  Section 54956.9, subdivision (a), provides: "Nothing in this chapter shall be construed to prevent a legislative body of a local agency, based on advice of its legal counsel, from holding a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation . . . ."  The term "pending litigation" includes circumstances where there is a "significant exposure to litigation against the local agency" (§ 54956.9, subd. (d)(2)) or the agency has received "written communication from a potential plaintiff threatening litigation" (§ 54956.9, subd. (e)(3)).  As the Supreme Court has noted, the Brown Act broadly preserves the attorney-client privilege for local governing bodies.  (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373.)  There is a recognition that "public entities need confidential legal advice to the same extent as do private clients."  (*Id.* at p. 374.)  Thus, the Attorney General has interpreted section 54956.9 to permit "individual members of a legislative body not only to deliberate and exchange opinions *with counsel* but also *among themselves* in the presence of counsel."  (75 Ops.Cal.Atty.Gen. 14, 18 (1992).)  The Brown Act thus "recognizes the need at times to both deliberate and act in private when necessary."  (*Id.* at p. 20.)  However, the purpose of section 54956.9 is "'to permit the body to receive legal advice and make litigation decisions only; it is not to be used as a subterfuge to reach nonlitigation oriented policy decisions.'"  (*Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 186 (*Trancas*).)

**C.** ***The trial court did not err in denying motions to compel***

> **1.** *The court was not required to conduct in camera review*

Appellant alleged that the city council violated the Brown Act by discussing the merits of the pending motion to rescind its prior act in the closed session and that commitments or agreements regarding voting were made by the councilmembers present in the closed session. As a result, appellant sought to have the trial court order the city to produce the transcript of the closed session for in camera review, in order for the court to make an initial determination as to whether the Brown Act was violated.

Appellant cites section 54957.2, subdivision (a), arguing that this provision provides that the closed session minutes and recordings must be made available when there is a mere allegation that the Brown Act has been violated. We disagree. Section 54957.2 provides for in camera review of a legislative body's minute book relative to closed meetings held under section 54957, which relates to closed sessions involving security threats or employment matters. Section 54957.2 does not mandate disclosure of attorney-client privileged matter to a court upon the mere allegation of a Brown Act violation.

Section 54960, which is applicable to a potential violation of section 54956.9, provides that a party seeking discovery or disclosure of a recording of a closed session "shall file a written notice of motion with the appropriate court." (§ 54960, subd. (c)(2)(A).) Upon reviewing the motion, if the court "finds that there is good cause to believe that a violation has occurred, the court *may* review, in camera, the recording of that portion of the

closed session alleged to have violated the act." (§ 54960, subd. (c)(3), italics added.) Thus, in camera review is discretionary and is only permitted where there is good cause to believe a violation has occurred. Section 54960, subdivision (c)(5), mandates that "[t]his section shall not permit discovery of communications that are protected by the attorney-client privilege." Thus, we reject appellant's argument that in camera review was mandatory in this matter.

Appellant relies on two cases to illustrate the position that in camera review was required in this matter. We find both are distinguishable. *Shapiro, supra*, 96 Cal.App.4th 904, involved closed session discussions with real estate negotiators, authorized under section 54956.8, regarding the building of a baseball ballpark in San Diego. The plaintiff brought the action for declaratory and injunctive relief to require "fuller disclosure of the items under discussion in the context of real estate negotiations involving the overall large redevelopment project." (*Shapiro*, at p. 906.) The San Diego City Council had posted agendas for 16 closed sessions from January through October 1999 with only a single, broad description for each entire meeting. The descriptions did not reference specific parcels of property or specific transactions. The plaintiff alleged that the closed session meetings included substantive discussions that went well beyond the scope of the agenda items noted. Declaratory and injunctive relief was sought on the ground that the public had a right to know what was going on in the closed sessions and the city council was not complying with its obligations under the Brown Act. (*Shapiro*, at p. 908.) The city council in that matter did not assert attorney-client privilege as to any portion of the meetings. Under those circumstances, the

19

trial court conducted an in camera review of the confidential minutes of the closed sessions to determine whether the business conducted during the closed sessions had been properly noticed. (*Shapiro*, at p. 908.) Following its review, the trial court concluded that the city council had violated both the letter and the spirit of the Brown Act. (*Ibid.*) The *Shapiro* court affirmed. (*Id.* at p. 925.) *Shapiro* does not suggest that in camera review is necessary where a public entity claims attorney-client privilege in connection with a closed session to address the issue of threatened litigation.

Appellant also cites *Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors* (2003) 112 Cal.App.4th 1313 (*LA Times*). In *LA Times*, the plaintiffs alleged numerous violations of the Brown Act, including secret directions and telephone calls regarding whether to place a certain measure on the ballot. (*LA Times*, at p. 1320.) The board contended that its actions were in full compliance with the Brown Act. "To support its contentions, the Board filed under seal numerous documents that it believed were privileged, asking the trial court to review them." (*LA Times*, at p. 1320.) Thus, the public agency itself requested the in camera review. On appeal, the matter involved attorney fees, thus the in camera review of documents was not discussed further. The case is unhelpful to appellant here.

Appellant argues that the trial court erred by relying on Evidence Code section 915, subdivision (a) to determine that it was not permitted to require disclosure of information claimed to be privileged in order to rule on the claim of privilege.[4] Appellant

---

[4] Evidence Code section 915, subdivision (a) provides, in part, that a court "may not require disclosure of information

points out that Government Code section 54956.9, subdivision (b) provides: "For purposes of this chapter, all expressions of the lawyer-client privilege other than those provided in this section are hereby abrogated.  This section is the exclusive expression of the lawyer-client privilege for purposes of conducting closed-session meetings pursuant to this chapter."  Based on this language, appellant argues that Evidence Code section 915, subdivision (b)'s prohibition of court review of information to determine whether it is privileged does not apply here.

The trial court was correct in concluding that a court "'may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege . . . .'" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 736 (*Costco*), quoting Evid. Code, § 915, subd. (a).)  The *Costco* court discussed various facts that a court may evaluate to determine whether the attorney-client privilege applies, such as whether the privilege is held by the party asserting it, whether the attorney-client relationship existed at the time the communication was made, and whether the client intended the communication to be confidential.  (*Costco*, at p. 737.)  Thus, while a litigant may have to reveal some information to determine the applicability of the privilege, "it does not follow that courts are free to ignore the section's prohibition and demand in camera disclosure of the allegedly privileged information itself for this purpose."  (*Ibid.*)

We reject appellant's suggestion that Government Code section 54956.9, subdivision (b) renders Evidence Code section 915 inapplicable.  While section 54956.9, subdivision (b) provides

---

claimed to be privileged . . . in order to rule on the claim of privilege."

21

the "exclusive expression of the lawyer-client privilege for purposes of conducting closed-session meetings," this provision does not purport to curtail the substantive scope of the privilege—or, more to the point, the procedural mechanism for evaluating whether the privilege applies—in any way. Nor does appellant cite any authority so holding. Thus, we conclude the trial court properly followed the mandate set forth in Evidence Code section 915, subdivision (b), preventing it from demanding disclosure of the allegedly privileged meeting recording in order to evaluate the city's claim of privilege. At oral argument, appellant argued that the fact that the Brown Act authorizes, as a remedy, the recording of future closed meetings necessarily means that trial courts in those future cases would be able to review those recordings in camera. We disagree, as the remedy of recording just means that a verbatim record of the closed meeting will be available if and only if the trial court in that future case determines there is good cause to believe a violation has occurred and, consistent with Evidence Code section 915, that the closed session, or relevant portion thereof, was not privileged. (Gov. Code, § 54960, subds. (b), (c).)

*Roberts v. City of Palmdale, supra*, 5 Cal.4th 363 supports this conclusion. In *Roberts*, a citizen demanded a copy of a letter written from the city attorney to the city council regarding the council's approval of a parcel map application. (*Id.* at p. 368.) The *Roberts* court held that the letter was protected by the attorney-client privilege in spite of the broad policy of the Brown Act, concluding that the Brown Act "broadly preserv[es] the attorney-client privilege for local governing bodies." (*Roberts*, at p. 373.)

22

**2.** *The court did not abuse its discretion in declining to compel disclosure of any portion of the closed session*

Appellant cites portions of the Fauble declaration, contending that these portions of the privilege log show that the city strayed from the subject of threatened litigation, in violation of *Trancas, supra,* 138 Cal.App.4th at page 186. In particular, appellant cites language in which Fauble states that "City Council members discussed with counsel and deliberated in relation to the closed-session matter before Council, the legality of deferring to, and whether and to what degree it was prudent to defer to, assessments of a City Council member who claimed and explained the basis of his purported greater knowledge and expertise with the matter before Council." The quoted portion includes discussions with counsel on the legality and prudence of certain actions.[5] The trial court did not abuse its discretion in determining that such discussions were privileged. The court's ruling shows a well-reasoned approach, taking into consideration the context in which the discussions took place. The court concluded that the discussion concerning deferring to a certain councilmember, in this context, was a legal issue. The court further concluded that "the legality and prudence of deference

---

[5] Appellant insists that the quoted language is an admission that "the City Council discussed whether its members should vote in accordance with Councilman Ryu's wishes on the rescission motion since the property lies within his district . . . ." Nothing in the quoted language suggests this interpretation. In fact, the Fauble declaration confirmed that at no point in the closed session did any council member agree as to how to vote, promise or commit to vote a certain way, or direct other council members as to how they should vote.

23

were intertwined." The court's conclusion that the matter was privileged in this context was reasonable and well within the court's discretion.

Appellant sets forth 14 separate portions of the Fauble declaration that appellant insists show discussions to which the attorney-client privilege should not apply. These portions include incidental opening statements; project background, including the history of the proposal and process; background city law and planning processes; motion and proposal development before the city council; the effects of rescinding, and considerations in favor of and against rescinding; as set forth above, whether deference to a council member with greater knowledge of the proposal is warranted or legal; discussions concerning confidentiality; and consideration of potential courses of action in light of the threatened litigation, including relevant planning process, timing, state law, framing of legal issues, and required information relevant to alternative courses of action.

In ruling on appellant's motion, the trial court relied on *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 332, for the proposition that confidentiality of closed sessions is "strongly inferred from the various provisions of the [Brown] Act pertaining to the recording of closed sessions." The court further noted that disclosure of the closed session proceedings necessarily destroys the closed session confidentiality which is inherent in the Brown Act. The trial court reviewed the privilege log and Fauble declaration and reasonably concluded that all discussions "were motivated by the pending litigation within the meaning of section 54956.9(a), not politics or public policy."

The privilege log and Fauble declaration support the trial court's conclusion that all discussions in the closed session were

24

in response to threatened litigation.  The Fauble declaration confirms that Fauble personally attended the closed session and that, "[e]xcept for insignificant statements at the start of the April 1, 2016 meeting, all of the discussion at that closed-session meeting concerned legal advice and presentation of background facts by necessary staff, deliberation of considerations regarding potential causes of action and legal exposure, and possible courses of action by the City Council and associated consequences of those possible courses of action in response to threatened litigation."  Fauble also made clear that at no time did anyone present at the meeting discuss how any member should vote.  Fauble stated: "The President of the City Council did not expressly or impliedly direct the other City Council members as to how to vote."  He further attested: "No City Council member agreed as to how to vote.  No City Council member committed or promised to vote a certain way."  The privilege log shows that Assistant City Attorney Kaufmann-Macias was a speaker during the majority of the discussions, and all such discussions were related to the threatened litigation and fell into the categories that Fauble described.  No abuse of discretion occurred.[6]

---

[6]     Because we have determined that the trial court did not err in declining to review the record of the meeting in camera, we do not address appellant's arguments as to the appropriate remedy had such an error occurred.  Appellant argues that should a violation of the Brown Act occur, any action taken in violation of the Brown Act is null and void pursuant to section 54960.1, subdivision (a).  Appellant also argues that the court had authority to order the city council to audio record its future closed sessions and to preserve the audio recordings under section 54960, and appellant would be entitled to attorney fees and costs

25

## II. Third cause of action for promissory estoppel

The elements of a promissory estoppel claim are (1) a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is both reasonable and foreseeable; and (4) the party asserting estoppel must be injured by his reliance. (*Flintco Pacific, Inc. v. TEC Management Consultants, Inc.* (2016) 1 Cal.App.5th 727, 734.)

The trial court sustained the city's demurrer to appellant's third cause of action for promissory estoppel on the ground that appellant did not allege a promise by the city. The trial court found that "the March 2015 Action is a mere factual statement that the City would enter negotiations with [appellant]. On its face, the March 2015 Action does not state that the City will unquestionably acquire the parcel."

We review the trial court's ruling sustaining the demurrer de novo, exercising independent judgment as to whether a cause of action was stated as a matter of law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We apply the abuse of discretion standard in reviewing the trial court's denial of leave to amend. (*Ibid.*)

Appellant contends that the trial court was incorrect in finding no allegation an actionable promise, as the FAPC alleged: ". . . the March 2015 Action constituted a promise that the City

pursuant to section 54960.5. We express no opinion as to the available remedies had a violation occurred. We further decline to address appellant's policy argument that the trial court's ruling would permit a city to hide its deliberations on almost all land use projects because CEQA litigation is so prevalent. That was not the issue here, where appellant had written two letters expressly threatening legal action.

would consider the GPA, ZC, [and] SPR[7] for the Development Property in exchange for the anticipated acquisition of the Donation Property. This necessarily included the preparation of an EIR, the cost for which was to be borne by [appellant], and required that the City conduct hearings to consider the approvals. . . . [Appellant] understood at the time that the City's promise did not include a promise to approve the GPA, ZC and SPR, but he did reasonably understand the City's clear promise was to allow the process to be completed, including the EIR preparation and the public hearings on the GPA, ZC and SPR."

Thus, appellant contends, the FAPC alleged all the elements of a claim for promissory estoppel against a government entity, including a promise.

However, the motion adopted by the city council reveals no such promise.[8] The March 18, 2015 action by the city council "authoriz[ed]" and "instruct[ed]" the Department of General Services to "enter into negotiations" with appellant for the city to acquire a parcel for open space, and "instruct[ed]" the Planning Department to "initiate consideration" of a GPA and ZC, to rezone the parcels. (Some capitalization omitted.) Contrary to appellant's allegations, the city's motion to initiate consideration does not constitute a promise to prepare an EIR or conduct hearings to consider the approvals. Instead, the nature of any action on the part of the city was ambiguous.

---

[7]    In the FAPC, "SPR" stood for site plan review.

[8]    Facts appearing in documents properly considered by the trial court will be accepted as true and, if contrary to the allegations in the pleading, will be given precedence. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

27

In order to state a claim for promissory estoppel, a plaintiff must allege a promise that is "'clear and unambiguous in its terms.'" (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.) "'Estoppel cannot be established from . . . preliminary discussions and negotiations.'" (*Ibid.)* "A 'promise' is an assurance that a person will or will not do something." (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 417.) In the context of land use claims against the government, "[c]ourts have yet to extend the vested rights or estoppel theory to instances where a developer lacks a building permit or the functional equivalent, regardless of the property owner's detrimental reliance on local government actions and regardless of how many other land use and other preliminary approvals have been granted." (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 322 (*Toigo*).) To the contrary, ""[w]here no such permit has been issued, it is difficult to conceive of any basis for such estoppel.""" (*Ibid.*)

Here, no basis for a claim of promissory estoppel existed. The city did not make a clear, unambiguous promise to appellant to prepare an EIR, conduct public hearings, or otherwise take action on appellant's property proposals. The city's decision to enter negotiations, and to initiate consideration, do not constitute actionable promises as a matter of law, therefore the trial court did not err in sustaining the city's demurrer to appellant's promissory estoppel cause of action.[9]

---

[9] As we have determined there was no actionable promise as a matter of law, we decline to discuss the parties' competing arguments regarding governmental immunity. (§ 818.2; *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 519; *Land Waste*

28

### III. Fifth cause of action for violation of civil rights

The Fourteenth Amendment of the United States Constitution states in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law." (U.S. Const., 14th Amend., § 1.) Before reaching any question about the fairness of a particular action, the court must analyze whether a protected interest in property is implicated. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1178 (*Clark*).) "If no such interest is involved, then the . . . protections of the due process clause do not come into play." (*Ibid.*)

Appellant argues that the city's act of rescinding the March 2015 action constituted a violation of appellant's due process rights because the act was based on a change of politics, rather than any criteria or government standards.[10] Appellant argues that the arbitrary action of the city council in rescinding the March 2015 action was legally unsupportable. Appellant cites *Ross v. City of Yorba Linda* (1991) 1 Cal.App.4th 954, 968 (*Ross*), for the proposition that the government may not "'deprive an

---

*Management v. Contra Costa County Bd. of Supervisors* (1990) 222 Cal.App.3d 950, 962-963.)

[10] Appellant asserts that the city violated both its procedural and substantive due process rights. However, appellant cites no authority suggesting that the city's procedure was constitutionally deficient. Therefore, we focus on the substantive due process claim. (*Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318 ["Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned."].)

individual of property rights by a plebiscite of neighbors . . . . Such action is arbitrary and unlawful . . . .'"

The trial court sustained the city's demurrer to this cause of action on the ground that appellant failed to allege that appellant was granted any property right by the March 2015 action. The court stated: "The FAP[C] does not allege that the project ha[d] already been approved or that permits had already been issued. Nor does the FAP[C] allege that the City was otherwise bound by its indication (by seeking to enter into negotiations with [appellant]) to rezone the Property and acquire the Donation Property. Thus, the FAP[C] does not allege a property interest for purposes of due process."

As set forth above, we review the trial court's decision de novo. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) We find the trial court correctly determined that appellant failed to allege a protectable property interest. As explained in *Clark, supra*, 48 Cal.App.4th at page 1180, "'[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Thus, the *Clark* court stated that the relevant analysis must focus on "'the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome.'" (*Ibid.*) "'Any significant discretion conferred upon the local agency defeats the claim of a property interest.'" (*Ibid.*)

Here, the city council's actions were discretionary legislative actions, and the council possessed considerable discretion in considering appellant's request for a GPA and ZC. Appellant admitted in discovery responses appellant's understanding that the city retains full discretion to approve or

30

deny any land use entitlements. The city council's broad discretion to deny appellant's requests ""suffices to defeat the existence of a federally protected property interest."" (*Clark, supra*, 48 Cal.App.4th at pp. 1180-1181.)

The cases cited by appellant are distinguishable. *Ross* held that the landowners had been subjected to discriminatory "'spot zoning,'" which could not be justified by neighborhood opposition. (*Ross, supra*, 1 Cal.App.4th at pp. 960, 970.)[11] As the plaintiffs and two of their neighbors were "special objects of legislative action," the enactment was "constitutionally impermissible." (*Id.* at p. 970.) Such is not the case here, where appellant has not been singled out for special legislation. *Del Monte Dunes v. City of Monterey* (9th Cir. 1990) 920 F.2d 1496 is also distinguishable as it involved the city's abrupt change of course after it had "given approval to the 190-unit project, with 15 conditions that appellants substantially met." (*Id.* at p. 1508.) Under these circumstances, the appellants' substantive due process allegations survived summary judgment. Here, in contrast, the city never gave approval, conditional or otherwise, to appellant's proposed project. Instead, the city merely agreed to enter negotiations and initiate consideration of appellant's requested GPA and ZC.

Because appellant failed to allege any property interest protected by the due process clause, the trial court did not err in sustaining the city's demurrer to appellant's constitutional claim.

---

[11] "Spot zoning is '[w]here a small parcel is restricted and given less rights than the surrounding property . . . .'" (*Ross, supra*, 1 Cal.App.4th at p. 960.)

## IV.  Second cause of action for inverse condemnation

Appellant contends that the trial court erred in entering summary judgment against appellant on the second cause of action for inverse condemnation/regulatory taking.  In reviewing the trial court's decision, we apply a de novo standard of review, considering all the evidence set forth in the moving and opposition papers except that to which objections have been sustained.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

State and federal law prohibit the government from taking private property without just compensation.  (U.S. Const., 5th Amend.,; Cal. Const., art. I, § 19.)  A two-step analysis is used to determine whether a taking has occurred: "first, we determine whether the subject matter is 'property' within the meaning of the Fifth Amendment and, second, we establish whether there has been a taking of that property, for which compensation is due."  (*Engquist v. Oregon Dept. of Agriculture* (9th Cir. 2007) 478 F.3d 985, 1002.)  When a plaintiff alleges a regulatory taking, the plaintiff "must establish that the regulation has in substance 'taken' his property—that is, that the regulation 'goes too far.'" (*MacDonald, Sommer & Frates v. Yolo County* (1986) 477 U.S. 340, 348, fn. omitted.)  Regulations that do not interfere with the present permitted use of a property are generally not considered takings, because they do not interfere with the owner's "primary expectation concerning the use of the parcel." (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104, 136.)

Courts lack jurisdiction to adjudicate a takings claim where the government has not made a final decision on the scope of development permitted on the property at issue.  Thus, "an essential prerequisite" to the assertion of a takings claim "is a

final and authoritative determination of the type and intensity of development legally permitted on the subject property." (*MacDonald, Sommer & Frates v. Yolo County, supra,* 477 U.S. at p. 348.) A "'final and authoritative determination'" requires that the plaintiff "must first have submitted a development plan which was rejected, but also . . . the plaintiff must seek variances which would permit uses not allowed under the regulations." (*Kinzli v. City of Santa Cruz* (9th Cir. 1987) 818 F.2d 1449, 1453-1454, overruled on other grounds in *Knick v. Township of Scott, Pennsylvania* (2019) 139 S.Ct. 2162; see *Calprop Corp. v. City of San Diego* (2000) 77 Cal.App.4th 582, 598 [affirming summary judgment where plaintiff had never asked the city for approval of any proposed development on the disputed land]; *Milagra Ridge Partners, Ltd. v. City of Pacifica* (1998) 62 Cal.App.4th 108, 119 [finding plaintiff's taking claim "not ripe for adjudication" where plaintiff had "not submitted an application to develop the property under the current zoning"].) However, "once it becomes clear that . . . the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened." (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 620.)

The trial court granted summary judgment in favor of the city on appellant's regulatory takings cause of action on the ground that it was not ripe and there was no material issue of disputed fact precluding summary judgment on this issue. The city presented evidence that appellant had not attempted to develop the property under its current zoning rules with one-family dwellings or any other allowed use under existing regulations. Appellant had not applied to develop any part of the property under existing zoning laws. Further the city had not "made a final decision about the nature and scope of development

33

that would ultimately be allowed on the Property." Appellant did not allege that the city changed the zoning after the property was purchased, only that the city refused to change the zoning designation. The court noted that appellant cited no authority for the position that a taking may be found based on a public entity's failure to change existing zoning laws.

Appellant argues that there existed a disputed issue of fact as to whether the city's action in rescinding the March 2015 action effected an unconstitutional taking. In response to the city's assertion that its rescission of the March 2015 action did not preclude consideration of other projects on the property, appellant stated: "[T]he city's rescission of the March 2015 Action terminated the consideration of a General Plan Amendment for the Property initiated by the City Council. [Appellant] then applied to the City Planning Director for the initiation of a General Plan Amendment for the Property and was summarily denied without explanation, terminating the consideration of a General Plan Amendment for the Property initiated by the Planning Director. Thus, the City has rejected [appellant's] General Plan Amendment attempts on multiple occasions, which is a final determination that the City will no longer consider the General Plan Amendment that it invited and induced [appellant] to spend approximately $400,000 to implement."

Appellant's response did not create a triable issue of material fact. Appellant's attempts to instigate consideration of a GPA does not fall under the Supreme Court's definition of a "final and authoritative determination" because appellant provides no evidence that he presented an application to develop the property under its current permitted zoning or attempted to obtain a variance for a smaller project. (*Kinzli v. City of Santa Cruz,*

34

*supra*, 818 F.2d at p. 1455 [a "'meaningful application'" does not include a request for "'exceedingly grandiose development'"]; see *Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1034 [finding that "[d]enial of approvals for a particular and relatively intensive residential development, as here, cannot be equated with a refusal to permit any beneficial use whatsoever"]; *Toigo, supra*, 70 Cal.App.4th at p. 330 [findng claim not ripe where "Toigo has not explored a reduction in size, scope, or intensity of the proposed development"].) None of the testimony referred to by appellant discusses how the city would respond to an application under existing regulations or for a smaller project. Instead, it provides mere "'speculation, conjecture, imagination or guess work'" as to how the city would respond to such an application. (*Toigo, supra*, at p. 330.) Thus, appellant's evidence is insufficient as a matter of law to create a triable issue of fact as to ripeness.

*County of Alameda v. Superior Court* (2005) 133 Cal.App.4th 558 is instructive. A property owner challenged a voter proposition that changed the designation of certain property. The property owner contended that the proposition constituted a taking. Alameda County prevailed on its motion for summary judgment on the ground that the claim was not ripe because the property owner had never submitted a development proposal to the county. The *County of Alameda* court rejected the property owner's argument that an application would be futile. (*Id.* at pp. 568-569.) The court noted that before claiming the futility exception, the landowner ""must submit *at least one development proposal and one application for a variance* if meaningful application and submission can be made."" (*Id.* at p. 568.)

Appellant failed to present evidence showing a triable issue of material fact on the question of ripeness.  The trial court thus did not err in granting summary judgment on this cause of action on the ground that appellant's claim was not ripe.

## V.      First cause of action for writ of mandate

Appellant's first cause of action attempted to state a claim for writ of mandamus pursuant to section 54960.1, subdivision (a).  Section 54960.1, subdivision (a) provides that a person "may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of Section 54953 . . . is null and void under this section."  Section 54953 requires that meetings generally be conducted in public.

Appellant argues that the trial court abused its discretion by declining to grant leave to amend this allegation.  However, appellants offer no proposed amendment showing how the claim could be amended to survive demurrer.  Appellant carries the burden on appeal of showing that a proposed amendment would cure the defect in the allegation.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  To satisfy that burden, an appellant "'"must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."'"  (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 580.)

Appellant appears to suggest that appellant seeks to amend the first cause of action for writ of mandate in the event that this court finds the trial court erred in entering judgment for the city on appellant's Brown Act claims.  Because we find that the trial court did not err in finding in the city's favor on the Brown Act claims, we find the trial court did not abuse its

discretion in sustaining without leave to amend the city's demurrer to appellant's first cause of action for writ of mandate.

## VI. Attorney fee award

Code of Civil Procedure section 2033.420, subdivision (a) provides that if a party "fails to admit . . . the truth of any matter when requested to do so," and the party requesting that admission "thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." Section 2033.420, subdivision (b), provides that the court "shall" make the order awarding expenses and fees "unless it finds" that one of four exceptions applies. One of those exceptions is "[t]he party failing to make the admission had reasonable ground to believe that that party would prevail on the matter." (Code Civ. Proc., § 2033.420, subd. (b)(3).)

The city was awarded $32,500 in attorney fees against appellant for the fees the city incurred proving that appellant's takings claim was not ripe. Appellant denied the city's requests for admission related to the ripeness of appellant's takings claim. The city proved the truth of those matters when it prevailed on summary judgment on this issue. We review the trial court's attorney fee award for abuse of discretion. (*Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1066.)

Appellant contends that the trial court abused its discretion because appellant provided testimony showing that appellant had reasonable grounds to believe it would prevail on the matters not admitted. In support of this argument, appellant cites to appellant's responses to form interrogatory No. 17.1, in which appellant provided facts to support denial of the city's

37

requests for admission (RFA's).[12]  Appellant insisted that the city's rescission of the March 2015 action made it legally and economically impossible to beneficially and productively use the property, but stated this would be a matter for expert analysis and testimony, to be disclosed when expert discovery is undertaken.  Thus, appellant argues, appellant had a reasonable, good faith basis to believe appellant would prevail on the issue of ripeness.

The trial court addressed appellant's arguments, finding that the city was entitled to fees on this issue based on appellant's "failure to admit that the city had 'not made it impossible' to develop his parcels of land with one-family dwellings or to 'undertake development of any kind.'"  Where the city asked if it was "'impossible' to build on the property, [appellant] had no reason to expect that a Court would find it

---

[12]     The city's RFA No. 1 asked appellant to admit that the takings claim was not ripe.  RFA Nos. 2, 13 and 24 asked appellant to admit that the city had not issued a final authoritative determination of development permitted on the properties.  RFA Nos. 3, 14, and 25 asked appellant to admit that the city had not made it impossible to develop the properties with a single one-family dwelling.  RFA No. 18 asked appellant to admit the falsity of the allegation in the FAPC that "the City made it impossible for [appellant] to undertake development of any kind on the Property."  Appellant objected to each of these RFA's before denying each one.  Appellant explained, "In light of the City's April 1 Rescission Motion and May 13 Rescission Motion, . . . it is impossible for [appellant] to either use or receive benefit from his investment in the Property.  Any future application for use of the Property will require new and/or updated studies and environmental review at significant cost to [appellant]."

38

impossible to build on the property because it was possible to build on the property albeit not to the same degree of financial lucrativeness preferred by [appellant]." The court found this significant because "the allegation that the City's actions made it impossible [to] develop the property was the sole basis for the Courts order of July 6, 2020 overruling the City's demurrer to the Second Cause of Action."

The purpose of RFA's is to expedite trial and narrow the issues. (*Barnett v. Penske Truck Leasing* (2001) 90 Cal.App.4th 494, 499.) Here, appellant denied the city's RFA's on the impossibility issue, leading the trial court to overrule the city's demurrer and allow appellant to move forward with the takings cause of action. After the city prevailed on this issue on summary judgment, the trial court was permitted to sanction appellant and award the city its costs of proving the truth of the requested admission. (*Ibid.*) The trial court in this matter found that appellant had no reasonable basis to deny the city had not made it impossible to develop his parcels of land—a fact which the city had to undertake to establish on summary judgment.

Appellant cites *Orange County Water Dist. v. The Arnold Engineering Co.* (2018) 31 Cal.App.5th 96, 120-121, for the proposition that "where RFAs require sophisticated analyses of technical issues, courts are more willing to credit a party's reasonable belief that it would prevail based on expert opinion evidence." The trial court did not err in concluding that the question of whether the city had made it impossible to build on the property was not a technical matter requiring sophisticated analysis. Appellant had not applied to use the property in permissible ways nor sought approval for a smaller-scale project. The trial court was justified in finding that use of the property

39

was not impossible simply because it would not generate the degree of financial gain that appellant desired. Appellant invested in the properties knowing the zoning limitations, and the city's decision to rescind consideration of appellant's hoped-for GPA and ZC does not render impossible any development of the property, regardless of the investment required for such development. Under the circumstances, the trial court was justified in declining to consider appellant's estimations of the financial infeasibility to build permitted residences on the properties to equate to impossibility. Appellant cites no authority for his position that financially practical impossibility should be treated as legal impossibility.

Where the responding party fails to show that one of the four enumerated exceptions is applicable, the court "shall" make the order awarding expenses, including fees. (Code Civ. Proc., § 2033.420, subd. (b).) Here, the trial court found that appellant did not show a reasonable ground to believe that appellant would prevail on the question of impossibility of development. Under the circumstances, the trial court did not abuse its discretion in ordering the award of attorney fees.[13]

---

[13] Appellant filed a request for judicial notice on December 29, 2022, asking that we take judicial notice of an article from the Los Angeles Times and a dictionary definition of the term "abrogate." Appellant's request for judicial notice is denied.

## DISPOSITION

The judgment and postjudgment award are affirmed.  The city is awarded its costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.